**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Steven Bass, | ) | |
| Plaintiff, | ) | No. CV-12-00393-PHX-PGR |
| vs. | ) | |
| Farm Bureau Financial Services, et al., | ) | ORDER |
| Defendants. | ) | |

Pending before the Court is Defendant Farm Bureau Financial Services' Motion for Bifurcation and Stay of Bad Faith Claim (Doc. 14). Having considered the parties' memoranda, the Court finds that the motion should be denied.[1]

Background

This first-party insurance action, in which the plaintiff alleges claims for breach of contract and bad faith, arises from a dispute over the amount of underinsured motorist ("UIM") benefits owed to the plaintiff by the defendant, the insurer of the plaintiff's employer, stemming from a two-vehicle accident that occurred on August 7, 2010, when another vehicle crossed the center line and collided head-on with the

---

[1] Although the defendant has requested a hearing on its motion, the Court concludes that oral argument would not aid the decisional process.

employer-owned vehicle that the plaintiff was driving. The accident caused severe and extensive injuries to the plaintiff, including in part dozens of facial fractures and rib fractures and a collapsed lung requiring surgery, all apparently stemming from him hitting his steering wheel and dashboard.  The plaintiff was hospitalized for approximately a month after the accident, mostly in an intensive care unit, and has been left with significant scarring and physical impairments; he still has to undergo more dental surgery.  The plaintiff's vehicle has not equipped with an airbag, and the defendant alleges that the plaintiff was not wearing his seatbelt at the time of the accident.  All three occupants of the at-fault vehicle died in the accident; two of them were wearing seatbelts and the car was equipped with airbags.

The at-fault driver's insurance had a policy limit of $25,000 per person and $50,000 per accident, of which the plaintiff received $20,000.   The plaintiff's employer's insurance policy issued by the defendant included UIM coverage of $1,000,000.  On November 23, 2010, about three months after the accident, the plaintiff, through counsel, sent the defendant a demand letter for the full UIM policy limit; the letter demanded that the $1,000,000 limits be paid by December 15, 2010. The demand letter included information regarding the limited amount of liability insurance carried by the at-fault driver, and information regarding the plaintiff's then medical bills of about $408,727; the medical bills are now about $426,562 with some $20,000 to $30,000 in estimated future medical bills.  Instead of making any offer at that time, the defendant, through counsel, responded on December 15, 2010 that it was not then able to fully and reasonably evaluate the plaintiff's claim due to evidence that the plaintiff was not wearing his seatbelt when the accident occurred, which would reduce the value of his claim by the amount of the medical bills caused by the non-use of the seatbelt, and its need for more complete medical records

1    which it requested that the plaintiff provide.   Rather than responding to the

2    defendant's documentation request, the plaintiff filed a breach of contract and bad

3    faith suit which was subsequently dismissed for lack of service.

4            Having received nothing further from the plaintiff, the defendant's counsel sent

5    a letter on September 27, 2011 asking what the plaintiff's intentions were regarding

6    the prosecution of his claim.   On October 20, 2011, the plaintiff's counsel responded

7    with a letter that provided medical records from the two hospitals that the defendant

8    had requested, reiterated his demand for the full $1,000,000 UIM policy limits,

9    argued that the seatbelt defense had no validity under the facts of the accident

10   because his biometrics engineering expert, whose report was included, had

11   concluded that the plaintiff would have sustained serious injuries even if he had been

12   using his seat belt given the severity of the forces involved in the crash, and because

13   two of the three people in the at-fault vehicle died notwithstanding that they had

14   been wearing seatbelts.   The letter gave the defendant  a deadline of November 18,

15   2011 in which to tender the policy limits.   On November 18, 2011, the defendant's

16   counsel responded with a letter that expanded on the validity of its seatbelt defense,

17   noting that it had retained its own biodymamic expert in 2010 in response to the

18   plaintiff's policy limits demand and that expert had opined in 2010 that the plaintiff

19   had suffered injuries he would not otherwise have suffered had he been using his

20   seatbelt; although the letter detailed the expert's findings, the expert was not named

21   in the letter nor was his report provided to the plaintiff.   The letter further stated that

22   the defendant's investigation had concluded that the undisputed value of the

23   plaintiff's UIM claim was $100,000 and the defendant tendered that amount to the

24   plaintiff.   The plaintiff accepted the tender as partial payment, and then the parties

25   held an unsuccessful private mediation on January 16, 2012.   The plaintiff

26

1   commenced this subsequently removed action in state court on January 24, 2012.

2   Discussion

3          The defendant is seeking pursuant to Fed.R.Civ.P. 42(b) to have this action

4   prosecuted in two completely separate phases, with the first phase being limited

5   solely to the litigation of the  breach of contract claim; under the defendant's plan,

6   no litigation, including discovery, related to the bad faith claim would commence until

7   the breach of contract claim is fully resolved. The plaintiff opposes any bifurcation

8   or stay.   Rule 42(b) provides in relevant part that "[f]or convenience, to avoid

9   prejudice, or to expedite and economize, the court may order a separate trial of one

10  or more separate issues, claims[.]"  The Court has broad discretion in determining

11  whether the requested bifurcation is appropriate. Hangarter v. Provident Life and

12  Accident Ins. Co., 373 F.3d 998, 1021 (9th Cir. 2004).

13         The defendant's main argument is that its bifurcation and stay request is

14  appropriate because the bad faith claim is premature until the breach of contract

15  claim is resolved.[2]  The gist of the defendant's contention is that there will be no

16  need for any litigation related to the bad faith claim if the jury, in resolving the breach

17  of contract claim, values the plaintiff's damages at or the below the $100,000 the

18  defendant has already tendered to the plaintiff for UIM benefits because it would

19  then be meaningless for the plaintiff to argue that the defendant's investigation was

20  lacking for bad faith purposes given that the jury will have decided that the defendant

21  came to the right result.  The Court is not persuaded.

22         While the Court recognizes that bifurcation can be appropriate in the

23

24         [2]

25         The Court notes that it is discussing herein only those arguments raised
    by the parties that the Court considers to be minimally necessary to the resolution
26  of the defendant's motion.

- 4 -

insurance context when the resolution of a single claim or issue would be dispositive of the entire case, *see* Drennan v. Maryland Casualty Co., 366 F.Supp.2d 1002, 1007 (D.Nev.2005) (citing to O'Malley v. U.S. Fidelity and Guaranty Co., 776 F.2d 494, 500-01 (5th Cir.1985) (bifurcation was proper because Mississippi substantive law did not allow an insured to recover against an insurance company for bad faith in handling a claim if the insured did not prevail on the issue of coverage), the defendant has not met its burden of establishing that the resolution of the breach of contract claim in the defendant's favor will in fact automatically obviate the need for a resolution of the bad faith claim.  Under Arizona law, one of the ways an insurer may commit bad faith is in processing or evaluating a claim in an unreasonable manner. James River Ins. Co. v. Hebert Schenk, P.C., 523 F.3d 915, 923 (9th Cir. 2008) (citing to Zilsch v. State Farm Mutual Automobile Ins. Co., 995 P.2d 276, 279 (Ariz.2000)).  Because of this, the fact that the insurer ultimately paid the claim, or ultimately offered to settle the insured's claim for an amount within the range of possibility, is not an absolute defense to a bad faith case. Zilsch, 995 P.2d at 279); Deese v. State Farm Mutual Automobile Ins. Co., 838 P.2d 1265, 1270 (Ariz.1992) (In reaffirming a previous holding that the breach of an express covenant is not a necessary prerequisite to an action for bad faith, the court held that "a plaintiff may simultaneously bring an action both for breach of contract and for bad faith, and need not prevail on the contract claim in order to prevail on the bad faith claim, provided plaintiff proves a breach of the implied covenant of good faith and fair dealing.") *See also*, Tavakoli v. Allstate Property & Casualty Ins. Co., 2012 WL 1903666, at *8 (W.D.Wash. May 25, 2012) (In declining to bifurcate an insurance breach of contract claim from a bad faith claim involving UIM benefits, court noted that there are many scenarios in which an insurer may be liable for bad faith without

proof of an improper denial of benefits.)

Based on the current record, which does not include any expert evidence from the defendant, the Court concludes that the bifurcation and stay sought by the defendant would neither promote judicial economy nor avoid jury confusion and would unduly prejudice the plaintiff because there is facially a significant overlap between the breach of contract claim and the bad faith claim inasmuch as both concern in part the defendant's alleged failure to make the plaintiff a good faith offer, and because the defendant's seatbelt defense is relevant to both claims. McCoy v.Liberty Mutual Fire Ins. Co., 2009 WL 5215760, at *4 (W.D.Wash. Dec. 29, 2009) (citing to Miller v. Fairchild Industries, Inc., 885 F.2d 498, 511 (9th Cir.1989) (bifurcation is not appropriate when the issues are so intertwined that separating them would tend to create jury confusion and uncertainty); Deguchi v. Allstate Ins. Co., 2007 WL 3022235, at * 2 (D.Haw. Oct. 11, 2007) (same).  While the defendant characterizes  the plaintiff's bad faith claim as merely being that the defendant did not pay the plaintiff enough UIM benefits, and is thus no different from his breach of contract claim, the Court disagrees for purposes of the instant motion because the plaintiff does allege in his complaint that the manner in which the defendant determined the amount of its UIM tender was improper.

Even if the Court were to assume at this very early stage in the litigation, as the defendant would have it do, that the jury may ultimately find that the plaintiff's damages, which at the time the defendant tendered its $100,000 in UIM benefits consisted of over $400,000 just in medical bills alone, should be reduced to no more than the $120,000 received by the plaintiff in liability and UIM benefits due to his failure to wear the seatbelt available in his employer's vehicle, that would not automatically resolve the issue of whether the defendant's $100,000 tender was

reasonable at the time it was made in light of the facts then known to the defendant. The defendant's limited tender was apparently grounded on its opinion that most of the plaintiff's facial, head, and thoracic injuries occurred as a result of his failure to wear his seatbelt. But under Arizona law the injured party's failure to use an available seatbelt does not automatically result in a reduction of his damages. Rather, if the defendant proves that the plaintiff did not use an available seatbelt, that his failure to do so was unreasonable under the circumstances, and that the nonuse of the seatbelt produced or contributed substantially to producing at least a portion of his injuries, then the jury can consider that factor, along with all of the other evidence, in determining whether the damages he may otherwise be entitled to should be reduced. <u>Law v. Superior Court</u>, 755 P.2d 1135, 1142-43 (Ariz.1988). The limited record before the Court, which in effect only establishes in relevant part that the parties do not agree as to whether the plaintiff was wearing a seatbelt at the time of the accident and that they dispute whether he would have  suffered the same horrific injuries had he been wearing a seatbelt, is simply insufficient for the Court to endorse the defendant's damages-related speculations underlying his bifurcation and stay request.[3]  *See* <u>Ferguson v. State Farm Mutual Automobile Ins. Co.</u>, 2011

---

[3]        To the extent that the defendant also argues that bifurcation is appropriate on the ground that a combined trial of the two claims would prejudice it, such as by creating conflict and confusion generated by evidence that is admissible as to one claim but not as to the other claim, whatever prejudice to the defendant that might arise does not outweigh the interests of judicial economy and is in any case curable as the Court has various trial-related means at is disposal short of bifurcation to resolve these types of issues, such as the exclusion of evidence, the use of jury instructions related to the purpose certain evidence can be considered for, and, if necessary, the use of a single sequenced trial through which the breach of contract claim is resolved prior to the resolution of the bad faith claim. See <u>Tavakoli</u>, 2912 WL 1903666, at *9 (discussing various alternatives at trial to eliminate prejudice to the insurer when a bad faith claim is not bifurcated).   Under its normal practice, the

WL 4946349, at *1 (D.Alaska Oct. 18, 2011) (In declining to bifurcate a bad faith claim from a breach of contract claim in an UIM benefits action, court reasoned in part that "State Farm's argument that settlement of the UIM claim or a verdict in the range of what Ferguson has already recovered would reduce the likelihood that plaintiff would pursue the bad faith claim is speculative.")

Because the Court concludes that bifurcation is not now warranted, the Court necessarily declines to stay discovery related to the bad faith issue.  Therefore,

IT IS ORDERED that Defendant Farm Bureau Financial Services' Motion for Bifurcation and Stay of Bad Faith Claim (Doc. 14) is denied.

IT IS FURTHER ORDERED that the parties shall file an Amended Joint Case Management Report no later than September 21, 2012. The report shall update the current status of the litigation and shall propose new scheduling deadlines.

IT IS FURTHER ORDERED that the Scheduling Conference shall be held on **Monday, October 1, 2012, at 11:00 a.m.** in Courtroom 601.

DATED this 20th day of August, 2012.

Paul G. Rosenblatt
United States District Judge

Court would not make such decisions prior to the final pretrial conference.

- 8 -